UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| OMAR ROSALES § | |
| § | CIVIL ACTION NO. 5:16-CV-1071 |
| **Plaintiff** § | |
| § | |
| VS. § | |
| § | |
| HILL COUNTRY HEALTH § | |
|   MANAGEMENT, LLC and § | |
|   GALE GREGORY-LAINE § | |
| § | |
| **Defendant** § | |

# FIRST AMENDED COMPLAINT

TO THE HONORABLE U.S. DISTRICT JUDGE:

**COMES NOW**, Plaintiff OMAR W. ROSALES and brings this cause of action against HILL COUNTRY HEALTH MANAGEMENT, LLC, ("HILL COUNTRY HEALTH") and GALE GREGORY-LAINE.  DEFENDANTS operate a website for a clinic in the Boerne, Texas area.  Mr. ROSALES respectfully shows that the Defendants' website is not accessible to individuals with mobility disabilities, in violation of state and federal law.

## STATEMENT OF CLAIM

1. Mr. ROSALES, a person with a physical disability and mobility impairments, brings this action for declaratory and injunctive relief, attorneys' fees, costs, and litigation expenses against Defendant for violations of Title III of the Americans with Disabilities Act, 42 U.S.C. §§12101, §12181 *et seq.* ("known as the ADA").

2. Defendants refused to provide Mr. ROSALES and others similarly situated with an ADA-compliant website that provides information about the services

1

provided by the Defendants.  Based on these facts, Defendants have denied Mr. ROSALES the ability to navigate and utilize the information on the Defendants' website about the goods, services, facilities, privileges, advantages, and accommodations at Defendants' business.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), as the events complained of occurred in the City of Boerne, Kendall County, wherein the Defendants operates their clinic.

## PARTIES

5. Plaintiff OMAR ROSALES is a Disabled Veteran with mobility impairments and limited use of his hands. Mr. ROSALES has a disability, as established by the Veterans Administration and has a disabled placard on his vehicle from the State of Texas.  Mr. ROSALES has significant mobility impairments and uses aids for his daily tasks.  He is a "qualified individual with a disability" within the meaning of ADA Title III and a "person with a disability" within the meaning of Chapter 121.

6. Defendants HILL COUNTRY HEALTH MANAGEMENT, LLC, and GALE GREGORY-LAINE own and operate the website that features information about its clinic location at 1421 S. MAIN ST., #111, BOERNE, TX 78006.  As a clinic, the business is a place of public accommodation, operated by a private entity, whose operations affect commerce within the meaning of Title III of the ADA.  The website of

the business must comply with the Americans with Disabilities Act.

7. Defendants HILL COUNTRY HEALTH MANAGEMENT, LLC, and GALE GREGORY-LAINE operate a business in Texas as indicated by their business address of 1421 S. MAIN ST., #111, BOERNE, TX 78006.  Defendants can be served via service to the Registered agent MARK K. DEDMON at 1421 S. MAIN, STE 111, BOERNE, TX 78006 and personal service at 1421 S. MAIN ST., #111, BOERNE, TX 78006.

**FACTS**

8. MAIN STREET URGENT CARE CLINIC is a business establishment and place of public accommodation that operates in Boerne, Texas.  MAIN STREET URGENT CARE CLINIC is owned and operated by Defendants.  The website belonging to Defendants at www.mainstreeturgentcaretexas.com does not comply with Federal law and the ADA.

9. As contractors that receive Federal funds and payments from Medicare and Medicaid, the Defendants must comply with all Federal regulations and rules.

10. The ADA violations are included in **Exhibit 1**.

11. Both a survey of the website and a screen grab verify this information.

12. The Plaintiff utilized the Defendants' website in October of 2016.

13. In encountering and dealing with the lack of an ADA-compliant website, the Plaintiff experienced difficulty and discomfort. This violation denied the Plaintiff full and equal access to facilities, privileges and accommodations offered by the Defendants. Furthermore, the Plaintiff was not able to fully obtain the information about Defendants' services provided by the Defendants.

14.     Additionally, on information and belief, the Plaintiff alleges that the failure to remove the barrier was intentional because: (1) these particular ADA requirements are intuitive and obvious; (2) the Defendants exercised control and dominion over the content of the website and, therefore, the lack of accessible features was not an "accident" because had the Defendants intended any other configuration, it had the means and ability to make the change.

15.     The Defendants' website does not comply with the specific requirements of the ADA that apply to websites.  Although not required by statute, the Defendants were notified of these violations.

16.     The Americans with Disabilities Act (ADA), 42 U.S.C. §12101, §12181, has been federal law for over 25 years.

## I. FIRST CAUSE OF ACTION
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990
## 42 U.S.C. § 12101

17.     Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

18.     Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

> a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with

disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

19. Pursuant to Federal Regulations promulgated by the Department of Justice (DoJ), a corporation or business entity's website must also comply with the ADA and have specific ADA-complaint features for navigation, user interface, utilization.

20. Here, the Defendants did not provide an ADA-Compliant website, although doing so is easily and readily done, and, therefore violated the ADA. This is a violation of the law and is discriminatory.

**RELIEF REQUESTED**

<u>Injunctive Relief</u>

21. Mr. ROSALES will continue to experience unlawful discrimination as a result of Defendants' refusal to comply with the Americans with Disabilities Act. Injunctive relief is necessary so he and all individuals with disabilities can access the Defendants' website equally, as required by law, and to compel Defendants to modify the

website to comply with Federal law.

Declaratory Relief

22. Mr. ROSALES is entitled to declaratory judgment concerning Defendants' violations of law, specifying the rights of individuals with disabilities to access the goods and services at the Defendants' location and obtain information about Defendants' business through Defendants' website.

23. The facts are undisputed and Defendants' non-compliance with the ADA has been proven through a screen grab and an ADA-Compliance audit. Plaintiff proves a *prima facie* case of ADA violations that were accomplished by the Defendants.

Attorneys' Fees and Costs

24. Plaintiff is entitled to reasonable attorneys' fees, litigation costs, and court costs, pursuant to 42 U.S.C. §12205, Fifth Circuit precedent, and Supreme Court precedent.

## PRAYER FOR RELIEF

THEREFORE, Mr. ROSALES respectfully requests this Court award the following relief:

A. A permanent injunction, compelling Defendants to comply with the Americans with Disabilities Act; and from discriminating against Mr. ROSALES and those similarly-situated, in violation of the law;

B. A declaratory judgment that Defendants' actions are a violation of the ADA;

C. Find that Mr. ROSALES is the prevailing party in this action, and order

Defendant liable for Plaintiff's attorneys' fees, costs, and litigation expenses; and,

    D.  Grant such other and additional relief to which Plaintiff may be entitled in this action.

DATED: NOVEMBER 14, 2016        Respectfully submitted,

                              By:    /s/ Omar W. Rosales
                                    Omar W. Rosales

                                    **THE ROSALES LAW FIRM, LLC**
                                    WWW.OWROSALES.COM
                                    OMAR W. ROSALES
                                    Federal No. 690657
                                    PO BOX 6429
                                    AUSTIN, TX 78762-6429
                                    (512) 520-4919 Tel
                                    (512) 309-5360 Fax
                                    omar@owrosales.com

# EXHIBIT 1

| Company | Main Street Urgent Care Texas | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Location** | San Antonio | | | | | | | | | |
| **Website** | http://www.mainstreeturgentcaretexas.com | | | | | | | | | |
| Rule 1 - Does the top of each page with navigation links have a "skip navigation" link? | Rule 2 - Do all links have a text description that can be read by a screen reader (not just a graphic or "click here")? | Rule 3 - Do all of the photographs, maps, graphics and other images on the website currently have HTML tags (such as an "alt" tag or a long description tag) with text equivalents of the material being visually conveyed? | Rule 4 - Are all of the documents posted on your website available in HTML or another text-based format (for example, rich text format (RTF) or word processing format), even if you are also providing them in another format, such as Portable Document Format (PDF)? | Rule 5 - If your website has online forms, do HTML tags describe all of the controls (including all text fields, check boxes, drop-down lists, and buttons) that people can use in order to complete and submit the forms? | Rule 6 - If your website has online forms, does the default setting in drop-down lists describe the information being requested instead of displaying a response option (e.g., "your age" instead of "18 - 21")? | Rule 7 - If a webpage has data charts or tables, is HTML used to associate all data cells with column and row identifiers? | Rule 8 - Do all video files on your website have audio descriptions of what is being displayed to provide access to visually conveyed information for people who are blind or have low vision? | Rule 9 - Do all video files on your website have written captions of spoken communication synchronized with the action to provide access to people who are deaf or hard of hearing? | Rule 10 - Do all audio files on your website have written captions of spoken communication synchronized with the action to provide access to people who are deaf or hard of hearing? |
| Fail | Pass | Fail | N/A | Fail | Fail | N/A | N/A | N/A | N/A |

| Rule 11 - Have all webpages been designed so they can be viewed using visitors' web browser and operating system settings for color and font? | Rule 13 - Is the website accessibility policy posted on your website in a place where it can be easily located? | Rule 22 - Does your website home page include easily locatable information, including a telephone number and email address, for use in reporting website accessibility problems and requesting accessible services and information? | *Note: Some rules have been intentionally left off as they deal with internal company policies which I cannot evaluate. *** Full list of rules available here: https://www.ada.gov/pcatoolkit/chap5chklist.htm | **Overall Score** |
|---|---|---|---|---|
| Pass | Fail | Fail | | Passed 2 out of 13 |

| | Unable to locate | Only phone is listed | | |
|---|---|---|---|---|
| | | | | |



**MAIN STREET Urgent Care**
A Minor Emergency Clinic

NOW 2 LOCATIONS: OPEN 7 DAYS A WEEK!
BOERNE: 830-249-9995
FREDERICKSBURG: 830-997-9995

Home | Staff | Locations | Services | New Patients | Contact Us | Patient Education

Reviews | Patient Education | Your First Visit | Offices

**HOME TOWN CARE AND COMPASSION, BIG CITY QUALITY URGENT CARE**

At Main Street Urgent Care we recognize that you have a choice when it comes to your healthcare provider. That's why we want you to be as relaxed and informed as possible about our practice. We've created this information-rich website to give you 24/7 access to an array of the most common healthcare topics. The more you know, the more comfortable we hope you and your family will be with our practice.

Since 2005, our practice (known as Boerne Acute Care Center until Dec 2015) has been committed to providing the Texas Hill Country with a convenient, cost-effective alternative to the emergency room for the care of non-life threatening illnesses and injuries. With many changes through the years, such as the opening of our new center in Fredericksburg in Dec 2015 and the change of name to Main Street Urgent Care, one thing remains constant: our physicians' and staff 's dedication to providing the most competent and compassionate medical care having labs, x-ray and EKG's available to them on site. We care for all ages and accept most major insurance, Medicaid, Medicare, and Tricare. We offer a variety of  Occupational Medicine services for employers including on-site vaccine administration, drug screening, employment physicals, and treatment of job-related injuries. Our comprehensive preventive Health Physicals include a wide variety of tests at a reasonable cost. We are open 7 days a week with extended evening hours and no appointment is ever necessary making it easy for you and your family to be confident we are here for "Life's Unexpected Emergencies". We will quickly get you on your way again.

Main Street Urgent Care treats conditions such as sore throats, upper respiratory infections, fever, ear infections, laceration repair,  fractures, sprains, bumps, acute asthma exacerbation, nausea, vomiting & diarrhea, rashes, allergic reactions, insect stings foreign body removal, migraine headaches, hypertension, dehydration, and many other non-life threatening conditions.

## WHEN TO GO TO THE EMERGENCY ROOM

- Persistent Chest Pain
- Persistent Shortness of breath
- Loss of Balance or fainting
- Difficulty Speaking, Altered Mental Status or Confusion
- Weakness or Paralysis
- Severe Heart Palpitations
- Sudden, Severe Headache
- Sudden Testicular Pain or Swelling
- Newborn baby with Fever
- Intestinal Bleeding
- Serious Burns
- Head or Eye Injuries
- Vaginal Bleeding with pregnancy
- Falls with injury or while taking blood thinning medications
- Seizures without a previous diagnosis of epilepsy.

**Meet the Providers**

## Gale Gregory-Laine, DO Medical Director

Main Street Urgent Care is pleased to have Dr. Gale Gregory-Laine, DO as our Medical Director and Supervising Physician. Dr. Gregory-Laine has many years of experience in the emergency room, She was born and raised in San Antonio, received a B.S. in Nursing from University of Texas Medical Branch, Galveston, Texas in 1978 and worked for many years in the ER and

on Faculty at the University of Texas Health Science Center. After achieving her Doctor of Osteopathic Medicine degree from Des Moines University of Medicine and Health Science in 1993, she has been an Emergency Medicine Staff Physician at Riverview Hospital, Indiana, Huntington Memorial Hospital, California, Baylor Hospital System, Dallas, Texas, Christus Santa Rosa Hospital System, and the Methodist Hospital System in San Antonio. Dr. Gregory-Laine is also very busy raising a beautiful teenage daughter. Her years of knowledge and experience are a wonderful contribution to our clinic and community.

## Mark Dedmon, PA-C, MPAS

Mark Dedmon, PA-C joined Main Street Urgent Care (formerly Boerne Acute Care Center) in January 2007 while also being the Senior Physician Assistant, Faculty Associate & Clinical Asst. Professor, University Transplant Center, The University of Texas Health Science Center at San Antonio since April 2000. Mark began his medical career as an Army medic in 1985, completed EMT-Paramedic School in 1987, US Army Special Operations Medical Sergeants Course in 1991 and became an Army Physician Assistant in April 1997. Mark is now one of the owners and clinic manager along with his wife, Melissa (Administrative Manager), of Main Street Urgent Care since January 2013.

## Beth Gardner, PA-C, MPAS

Beth Gardner, PA-C, MPAS has been an outstanding provider at Main Street Urgent Care, previously Boerne Acute Care Center, since January 2011. Beth graduated Cum Laude with a BS in Biomedical Sciences from Texas A & M University, College Station and received her Masters of Physician Assistant Studies from Texas Tech University Health Science Center.

## Rick Levada, PA-C, MPAS

We are so fortunate that Rick Levada, PA-C, MPAS joined our group in July 2013. Rick and his family moved to Boerne from Ft. Bragg, NC in May 2013. Rick has been a PA since 2007 specializing in Emergency Medicine and Emergency Care. Prior to becoming a PA, Rick was an EMT for 15 years.

## Megan Staudt, PA-C, MPAS

Megan Staudt, PA-C, MPAS has been a family health care provider since 2007. Megan graduated Cum Laude with a Bachelor of Science degree in Health from Texas A & M University in 2002. She received her Masters of Physician Assistant Studies from the University of Texas Health Science Center at San Antonio.

## Casey Jackson, PA-C, MS

Casey joined Main Street Urgent Care in October of 2015. She is a 2003 Summa Cum Laude graduate from Stephen F. Austin State University and later went on to attend Baylor College of Medicine to pursue a career as a Physician Assistant. She has professional experience in Internal Medicine, bio-identical hormone replacement therapy and medical aesthetics.

## Kathy Fryburger, PA-C, MPAS

Kathy Fryburger, PA-C has been a Certified Physician Assistant since 1996. She received her bachelor of Science degree at the University of Norte Dame. She then completed her Master's Degree at Baylor College of Medicine through the Physician

Assistant Program, where she graduated Valedictorian of her class.

## Fidencio Gonzales , PA-C, MPAS

Bio coming soon...

[Read more](#)

## Contact Us

Title
Name
Email
Guests Number
Phone
Message

Please do not submit any Protected Health Information (PHI).

Submit

## Main Street Urgent Care

## Connect with us:

- blog
- Twitter
- Facebook